IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA FLOURNOY, an individual, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No.: 3:05-cv-00560-VPM |
| | * | Honorable Vanzetta P. McPherson |
| | * | |
| MERCK & CO., INC., a Foreign Corporation | * | |
| | * | |
| | * | |
| Defendants. | * | |

## MOTION BY DEFENDANT MERCK & CO., INC. TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### INTRODUCTION

Defendant Merck & Co., Inc. ("Merck") moves this Court to stay all proceedings in this action pending its likely transfer to *In re VIOXX Prods. Liab. Litig.* (MDL) No. 1657, the MDL proceeding that has been established in the Eastern District of Louisiana to coordinate all product liability cases involving alleged health risks from VIOXX® (the "VIOXX® cases"). (*See* Transfer Order (attached hereto as Exhibit A).)

Pursuant to Rule 7.5 of the Judicial Panel on Multidistrict Litigation Rules of Procedure ("J.P.M.L.R.P."), on May 24, 2005 Merck provided notice to the Judicial Panel on Multidistrict Litigation (the "MDL Panel") of the pendency of this "tag-along" action. Merck expects the MDL Panel to issue an order transferring this case to the MDL court in the Eastern District of Louisiana shortly.

Pending the transfer of this case to the Eastern District of Louisiana, a stay of proceedings is necessary and appropriate to achieve the judicial economies that underlie 28

U.S.C. § 1407. Absent a stay, this Court would have to waste time supervising pre-trial proceedings and making rulings in a case over which it will likely soon lose jurisdiction and will probably never see again. Moreover, without a stay, Merck would be significantly and unfairly prejudiced because it would have to duplicate discovery and legal briefing in jurisdictions around the country.

## BACKGROUND

### A. MDL-1657

On February 16, 2005, the MDL Panel issued a Transfer Order establishing MDL Proceeding No. 1657, *In re VIOXX Products Liability Litigation*. The Transfer Order directed that the 148 cases subject to original motions be transferred and coordinated for pretrial proceedings in the U.S. District Court for the Eastern District of Louisiana, before the Honorable Eldon E. Fallon. (*See* Exhibit A.) In the Transfer Order, the Panel expressly held that the VIOXX® product liability cases have overlapping questions of fact:

> On the basis of the papers filed and hearing session held, the Panel finds that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Eastern District of Louisiana will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions focus on the alleged increased health risks (including heart attack and/or stroke) when taking Vioxx, an anti-inflammatory drug, and whether Merck knew of these increased risks and failed to disclose them to the medical community and consumers. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.

(*See id.*, p. 2.)

The MDL Panel also held that the "nearly 300 potentially related actions [then] pending in multiple federal districts . . . will be treated as potential tag-along actions." (*Id.* at n. 1.)

### B.  The Instant Action

On or about May 10, 2005, Plaintiff commenced this action against Merck by filing a Complaint in The United States District Court Northern District of Alabama Southern Division, Case Number CV-05-HS-0968-E. On May 13, 2005, Merck was served with a copy of Plaintiff's Complaint. On May 25, 2005, this matter was transferred to The United States District Court for the Middle District of Alabama Northern Division. There is no dispute that this case involves the same factual inquiries that the Panel notes were present in the VIOXX® cases generally, thereby warranting coordinated pre-trial proceedings in the Eastern District of Louisiana. Specifically, it is clear from the face of the Complaint that this case, like the other VIOXX® cases, focuses on the alleged increased health risks (including heart attack and stroke) when taking VIOXX®, an anti-inflammatory drug, and whether Merck knew of these increased risks and failed to disclose them to the medical community and consumers. For example, Plaintiff alleges that Merck was aware of the serious immediate and life-threatening hazard of said medication and failed to fully disclose and publicize the dangers of said medication. (Compl., ¶ 38).

Merck has been providing written notice to the MDL Panel of related actions twice weekly since MDL-1657 was created (every Tuesday and Friday). In its tag-along letter dated May 24, 2005, Merck provided notice to the MDL Panel of this related action. (*See* Exhibit B.) The MDL Panel has been regularly issuing conditional transfer orders transferring hundreds of additional related cases to Judge Fallon based on the information in these tag-along letters. Merck expects a conditional transfer order to be issued by the MDL Panel in this action within two weeks from now. Assuming Plaintiff does not object within the 15-day period set forth in J.P.M.L.R.P. 7.4(c), the transfer order will be filed in Judge Fallon's court upon expiration of

3

that period and become final. Thus, in all likelihood, the case will be transferred for coordinated pretrial proceedings within one month from today.[1]

## ARGUMENT

I. **THIS CASE SHOULD BE STAYED PENDING TRANSFER TO THE MDL.**

Guided by the "policies of justice and efficiency," this Court should exercise its discretion to stay all further proceedings here pending transfer of this case to MDL-1657. *Boudreaux v. Metropolitan Life Ins. Co.*, No. 95-138, 1995 WL 83788, *1 (E.D. La. Feb. 24, 1995). The power to stay is well established and particularly apt here. It is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S 248, 254 (1936). Where, as here, the MDL Panel has already decided that coordination is appropriate, and has designated a venue for the coordinated proceedings, a stay is particularly appropriate pending conditional transfer to those proceedings. *See New Mexico State Investment Council v. Alexander*, 317 B.R. 440, 446 (D. N.M. 2004); *Mathern v. Wyeth*, No. Civ.A. 04-2116, 2004 WL 1922028, at *1 (E.D. La. Aug. 25, 2004); *Knearem v. Bayer Corp.*, Civil Action 02-2096-CM, 2002 WL 1173551, at *1 (D. Kan. May 7, 2002); *Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. Apr. 3, 2001).

When deciding whether to issue a stay pending the MDL Panel's decision on transfer of an individual action, courts look at (1) considerations of judicial economy and (2) avoidance of conflicting rulings. *Mathern*, 2004 WL 1922028, at *1. As described below, consideration of both of these factors favor granting a stay of this action. The overwhelming majority of courts to

---

1. In the event Plaintiff chooses to object to transfer to the MDL court, there is a separate procedure for filing his objection and papers objecting to the transfer with the MDL Panel. The issue whether the case should be transferred would be set for the next available Panel hearing session. Given the overlapping factual issues this case appears to have with those already in the MDL proceedings, any opposition would almost certainly be futile.

4

have considered the issue have agreed: literally hundreds of VIOXX® cases have been stayed by courts around the country pending MDL coordination. These decisions in other VIOXX® cases make clear the necessity of a stay here. For example, in *Denny v. Merck & Co., Inc.*, No. 04-cv-00526, slip op. (S.D. Tex. Dec. 6, 2004), the Southern District of Texas court stayed all proceedings over plaintiffs' objection, holding that "[t]he power to stay all proceedings is well established and particularly apt here." *Id.* at 2. The court observed there that "[i]t would not be efficient for this Court to invest its limited time and resources in this claim, only for it to be transferred to MDL. Moreover, both sides will benefit by having a court familiar with the complex issues that arise in pharmaceutical claims." *Id.*

A.   **Judicial Economy Mandates a Stay.**

Because of the overlapping factual issues and similar legal theories that exist in the VIOXX® cases currently pending in federal court, including this civil action, much work would be needlessly duplicated if pretrial proceedings and discovery continues to go forward on a parallel track with MDL-1657. Moreover, if this Court were not to issue a stay, it would be making rulings that would likely be reconsidered after this case is transferred to Judge Fallon's court. As the court in *U.S. Bank, Nat'l Ass'n v. Royal Indem. Co.*, No. Civ. A 3:02-CV-0853-P, 2002 WL 31114069, at * 2 (N.D. Tex. Sept. 23, 2002), noted in granting defendant's motion for a stay, "[i]f the MDL motion is granted, all of the Court's time, energy, and acquired knowledge regarding the action and its pretrial procedures will be wasted." 2002 WL 31114069, at *2. *See also Fontanilles v. Merck & Co., Inc.*, No. 04-22799-CIV-HUCK (S.D. Fla. Dec. 14, 2004), slip op. at 2 ("Judicial consistency, economy and uniformity among similar VIOXX cases would be served by deferring resolution of the remand issue at this time"); *Falick v. Merck & Co., Inc.*, No. 04-3006 (E.D. La. Jan. 3, 2005), slip op at 2 ("Considering the multitude of cases currently

stayed due to the pending MDL coordination, the Court finds that staying the proceedings will serve the interests of judicial economy."). The Court should not expend its limited resources "familiarizing itself with the intricacies of a case that would be heard [for pre-trial purposes] by another judge." *See Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). Indeed, Judge Fallon has already issued orders anticipating the transfer of cases like this that will immediately apply upon transfer of the case to his court. *See, e.g., In re VIOXX® Products Liability Litigation*, Pretrial Order #1 (Exhibit C, pp. 1-2) ("This order . . . will also apply to any 'tag-along actions' later filed in, removed to, or transferred to, this Court.").

The Court should also not hold additional status conferences or issue additional discovery orders because "any efforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation." *Rivers*, 980 F. Supp. at 1360-61. Moreover, MDL courts regularly decide *Daubert* and dispositive motions before they return a case to the original transferor court. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) (excluding plaintiffs' causation and regulatory experts under *Daubert)*; *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603 (E.D. La. 2003) (granting defendant pharmaceutical manufacturer's motion for summary judgment). In fact, it is unlikely that this Court will ever see this case again once it is transferred to an MDL; as a 2004 report from the Administrative Office of the United States Courts revealed, fewer than 10% of the cases that have been resolved through MDL treatment since Congress enacted the MDL statute were ever transferred back to the original transferor district. Accordingly, a stay will conserve judicial resources.

In addition to the waste of judicial resources inherent in proceeding with this action prior to inevitable MDL transfer of this case to MDL-1657, Merck would be substantially prejudiced

6

by duplicative discovery and motion practice if a stay were not put in place. *See American Seafood, Inc. v. Magnolia Processing*, Civ. A. Nos. 92-1030, 92-1086, 1992 WL 102762, at *2 (E.D. Pa. May 7, 1992) ("The duplicative motion practice and discovery proceedings demonstrate that judicial economy and prejudice to the defendants weigh heavily in favor of a stay"). Plaintiffs across the country will surely notice the same set of Merck employees and former employees for deposition. Without a stay, the risk exists that Merck will have to produce these witnesses multiple times in different jurisdictions.

A stay will not, however, unduly prejudice Plaintiff in this action. First, any delay that Plaintiff may experience will be minimal, and the prejudice to Merck would far outstrip any harm to Plaintiff. *See Arthur-Magna*, 1991 WL 13725, at *1 (noting that even if a temporary stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay). Indeed, all of the parties – including Plaintiff here – will benefit through increased efficiency and coordinated pretrial case management and, as such, any potential delay is outweighed by the potential efficiencies available in a coordinated MDL proceeding. Second, this action is not on the eve of trial. Discovery has not yet begun. Because Plaintiff has expended limited resources to date, he will not be prejudiced by a limited delay. This Court should therefore stay all proceedings in this civil action pending a determination on the transfer of this case to MDL-1657.

### B. Without a Stay, There Is a Risk of Conflicting Rulings Between This Court and the MDL Court.

To avoid the risk of inconsistent substantive legal rulings, pretrial proceedings in this civil action and other actions should proceed in an orderly, coordinated fashion, as directed by the single court selected by the MDL Panel to coordinate these cases. *See Mathern*, 2004 WL

7

1922028, at * 1 ("a stay of this case pending transfer to the MDL will promote judicial efficiency and avoid conflicting rulings"); *Knearem*, 2002 WL 1173551, at * 1 ("Granting a stay of this litigation avoids the possibility of inconsistent pretrial rulings."); *Shannon v. Merck & Co., Inc.*, No. 2:03CV105-D-B, slip op. (N.D. Mass. Nov. 29, 2004) ("Here the court finds that because the issues involved in this matter are likely to be similar to other potentially transferred VIOXX cases, the policies of efficiency and consistency of pretrial rulings will be furthered by the this Court staying these proceedings."). Accordingly, the Court should stay these proceedings to ensure the efficient and consistent resolution of pertinent legal issues before the MDL judge.

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that this Court grant its motion to stay all proceedings in this case pending transfer to the MDL proceeding that has been established in the Eastern District of Louisiana.

Dated this 15 day of June, 2005.

/s Alan T. Hargrove, Jr.
Alan T. Hargrove, Jr.
    Bar Number: (ASB-0718-H46A)
Robert C. Brock
    Bar Number: (ASB-5280-B61R)
F. Chadwick Morriss
    Bar Number: (ASB-8504-S75F)

RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.
Post Office box 270
Montgomery, Alabama 36101-0270
Telephone: 334/206-3100
Fax: 334/263-4157
E-mail:    ath@rsjg.com
           rcb@rsjg.com
           fcm@rsjg.com
          Attorneys for Defendant

## CERTIFICATE OF SERVICE

     I hereby certify that on 6/15_____, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Craig L. Lowell, Esq.
Wiggins, Childs, Quinn & Pantazis, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, IL 35203

                                                     /s Alan T. Hargrove, Jr._____
                                                     Of Counsel